**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| DONALD EUGENE MINER, SANDRA RANDOLPH MINER, APPELLANTS | CIVIL ACTION NO. 5:17-CV-0879 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| TODD S. JOHNS, TRUSTEE APPELLEE | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is an appeal filed by debtors, Donald Eugene Miner and Sandra Randolph Miner ("the Miners" or "Appellants"), of the Bankruptcy Court's March 14, 2017 order denying their proposed Chapter 13 plan. [Rec. Doc. 1]. The Trustee, Todd S. Johns ("Trustee" or "Appellee"), opposes the appeal and recommends that the Court affirm the Bankruptcy Court's order. [Rec. Doc. 9]. For the reasons assigned herein, the order of the Bankruptcy Court is hereby **REVERSED** and **REMANDED** for further proceedings consistent with this Memorandum Ruling.

## BACKGROUND INFORMATION

On March 17, 2016, the Miners filed a voluntary joint petition for Chapter 13 bankruptcy relief. [Bankr. Doc. 1].[1] Donald Miner, age 62, is employed full time at Rose

---

[1] "Bankr. Doc." refers to entries contained in the bankruptcy docket in the underlying proceeding In re Miner, USBC, W.D. La., 16-10441. If this Court has referred to a bankruptcy document that is not contained in the record on appeal, the Court hereby takes judicial notice of the document. See ITT Rayonier Inc. v. United States, 651 F.2d 343, 345 at n.2. (5th Cir. 1981) (A court may take judicial notice of the records of an inferior court).

Neath Funeral Home where he earns a gross monthly income of $5,788.61. He is also employed part time at Aulds Funeral Home where he earns an additional $525.00 per month. Sandra Miner, age 52, is disabled and receives Social Security. The Miners are above median income, and therefore have an applicable commitment period of 60 months to complete Chapter 13 bankruptcy. See 11 U.S.C. § 1325(b)(4).[2] The Miners filed their first proposed Chapter 13 Plan on March 24, 2016. [Bankr. Doc. 8]. However, the Trustee and several creditors objected to the Plan. [Bankr. Docs. 21, 24, 26, 29]. On September 14, 2016, the Miners filed an Amended Plan. [Bankr. Doc. 46]. The same day the Miners also filed Amended Schedules I and J, which reflected Mr. Miner's voluntary monthly contributions to his 401(k) retirement plan in the amount of $700.82 (12% of his salary), and repayment to a 401(k) loan in the amount of $356.18 per month. [Bankr. Doc. 49]. Amended Schedule J indicated that Mr. Miner's 401(k) loan would be paid off February 20, 2020. Id. Amended Schedule I reflected that Mrs. Miner's only source of income is $1,253.00 from Social Security. Id.

On October 5, 2016, the Trustee filed objections to the confirmation of the Debtors' proposed Plan because it failed to increase payments to unsecured creditors after Mr. Miner's 401(k) loan repayments are complete. [Bankr. Doc. 52]. The Trustee questioned whether the Plan was proposed in good faith given Mr. Miner's monthly $700.82 voluntary contribution to his retirement fund, which is 12% of his gross monthly income. [Bankr. Doc. 52, 57]. However, after considering the inclusion of Mrs. Miner's Social Security income in addition to Mr. Miner's income on the overall budget,

---

[2] Title 11 U.S.C. § 1325(b)(4) defines the applicable commitment period as three years for debtors below median income, and five years for debtors above median income.

2

the Trustee withdrew his objections, recommended confirmation of the Plan, and submitted a proposed order of confirmation for the Court's approval. [Bankr. Doc. entry dated Nov. 9, 2016].

On January 16, 2017, the Bankruptcy Court denied confirmation of the proposed Plan as follows:

> Denied without prejudice, hearing required. Hearing set 9:30 a.m. on 3/8/2017. Combined, the debtor's voluntary 401(k) contribution and 401(k) loan repayment calculate to about 18% of his income. This plan only pays a 16% unsecured dividend.

[Bankr. Doc. 60].

On March 8, 2017, a confirmation hearing was held. [Bankr. Doc. 82]. Mr. Miner was the only witness called to testify. Id. He was questioned by his own counsel, counsel for the Trustee, and the Bankruptcy Court. Id. The matter was taken under advisement. Id. Thereafter, the Bankruptcy Court issued an order and opinion denying confirmation. [Bankr. Doc. 64]. The Bankruptcy Court's order contained the following holdings: (1) the Miners failed to meet their burden of proof for confirmation; (2) Mr. Miner's post-petition voluntary payments to his 401(k) plan are properly considered disposable income; (3) post-petition voluntary 401(k) contributions are allowed in Chapter 13 cases; (4) post-petition 401(k) contributions are limited by the good faith requirements of the Code; and (5) Mr. Miner cannot offset increased 401(k) contributions with his wife's Social Security income. Id. at 7.

The Bankruptcy Court also provided general guidance regarding retirement account contributions to the Chapter 13 bar, stating that in the future the Bankruptcy Court will presume that a 3% voluntary contribution to a retirement plan is reasonable.

Id. at 20. The Bankruptcy Court would consider allowing retirement contribution amounts greater than 3% if found to be reasonable on a case-by-case basis using a "totality of the circumstances" approach. Id.

The Miners filed an Amended Plan to comply with the Bankruptcy Court's concerns, which reduced Mr. Miner's voluntary 401(k) contribution to $178.63 per month, or 3% of his gross income. [Bankr. Docs. 66 and 70]. The 401(k) loan repayment was not changed and remained at $356.18. Id. The Miners also filed Amended Schedules I and J. [Bankr. Doc. 72]. No objections were filed, and the Bankruptcy Court confirmed the Amended Plan on June 26, 2017. [Bankr. Doc. 74]. The Miners have appealed the Bankruptcy Court's denial of their original proposed Plan. [Bankr. Doc. 76].

## JURISDICTION

This Court has appellate jurisdiction over final judgments, orders, and decrees issued by the bankruptcy court. 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

In reviewing a decision by the Bankruptcy Court, this Court functions as an appellate court, applying the same standards of review generally applied to federal appellate courts. Webb v. Reserve Life Ins. Co., 954 F.2d 1102, 1103-04 (5th Cir. 1992). This Court reviews discretionary decisions made by the Bankruptcy Court under an abuse of discretion standard. In re ASARCO LLC, 702 F.3d 250, 257 (5th Cir. 2012). This Court reviews a Bankruptcy Court's findings of fact for clear error. Id. Legal conclusions are reviewed de novo. Id.

4

# LAW AND ANALYSIS [3]

**I.    Whether the Bankruptcy Court properly determined that Mr. Miner's voluntary retirement contributions should be included as disposable income.**

The Bankruptcy Court held that Mr. Miner's post-petition voluntary 401(k) contributions are considered disposable income under the Bankruptcy Code, and should be included in determining the amount of funds available to pay unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1)(B). [Bankr. Doc. 64 at 8]. Appellants argue that the Bankruptcy Court erred, and that post-petition retirement contributions are excluded from disposable income. [Rec. Doc. 8 at 7-10]. The Trustee argues that the Bankruptcy Court was correct in finding that the contributions are disposable income. [Rec. Doc. 9 at 6].

To properly analyze this issue, the Court must begin with the statutory language of the Bankruptcy Code. The filing of a bankruptcy petition creates a bankruptcy estate, which is comprised of all of a debtor's legal and equitable interests in property unless specifically excluded by statute. 11 U.S.C. § 541(a). In a Chapter 13 proceeding the estate also includes property and earnings acquired by the debtor "after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. §§ 1306(a)(1) and (2). A Chapter 13 Plan must demonstrate that all of a

---

[3]   The Bankruptcy Court issued two holdings that the Miners did not brief on appeal. First, the Bankruptcy Court held that the Miners failed to meet their burden of proof for confirmation of the plan as required pursuant to 11 U.S.C. §§ 1322 and 1325(a). [Bankr. Doc. 64 at 7]. This holding was based primarily on Mr. Miner's testimony regarding his 401(k) contributions at the confirmation hearing. Id. at 8. Second, the Bankruptcy Court held that Mr. Miner could not offset increased 401(k) contributions with his wife's Social Security income. Id. at 16.  In light of this Court's ruling that 401(k) contributions are excluded from disposable income, both issues are moot.

debtor's projected disposable income received during the pendency of the bankruptcy must be paid to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B); see Hamilton v. Lanning, 560 U.S. 505, 509 (2010).

The term "disposable income" is defined by section 1325(b)(2)(A) as "current monthly income received by the debtor.... less amounts reasonably necessary to be expended" for the debtor's maintenance or support, for qualifying charitable contributions, and for business expenditures. Lanning, 560 U.S. at 510. "Current monthly income" is determined by calculating an average of the debtor's monthly income during a "look-back" period, generally consisting of the six months preceding the filing of the bankruptcy petition. Id. The Bankruptcy Court may also factor in known or virtually certain upcoming changes in a debtor's monthly income or expenses at the time of confirmation. Id. at 524.

In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") to correct certain perceived abuses within the bankruptcy system. See Milavetz, Gallop & Milavetz PA v. United States, 559 U.S. 229 (2010). BAPCPA newly defined the phrase "amounts reasonably necessary to be expended" for above median income debtors to include only certain specified expenses. See 11 U.S.C. § 1325(b)(3). To determine the "amounts reasonably necessary to be expended" for above income debtors, section 1325(b)(3) requires that expenditures be calculated using a "means test" in accordance with 11 U.S.C. §§ 707(b)(2)(A) and (B). These sections set forth various expenses, such as housing, transportation, food, and insurance expenses, which may be deducted from a debtor's overall disposable income

available to repay unsecured creditors.[4] Neither section 1325(b)(2) nor section 707(b)(2)(A) and (B) explicitly authorize 401(k) contributions as an allowable expense in calculating disposable income. In re Vanlandingham, 516 B.R. 628, 632 (Bankr. Kan. 2014).

Whether 401(k) contributions should be considered disposable income available to unsecured creditors, or whether such contributions are excluded from disposable income remains an unsettled question. The uncertainty is a result of the implementation of BAPCPA, which made significant, and at times inartful, changes to the bankruptcy code. Prior to the enactment of BAPCPA, both 401(k) loan repayments and 401(k) contributions were considered disposable income and were not a necessary expense. See In re Anes, 195 F.3d 177, 180-81 (3d Cir. 1999); In re Hill, 328 B.R. 490, 495 (Bankr. S.D. Tex. 2005); In re Cornelius, 195 B.R. 831, 835 (Bankr. N.D.N.Y. 1995). However, BAPCPA added two sections affecting both 401(k) loans and contributions. See 11 U.S.C. § 1322(f) and 11 U.S.C. § 541(b)(7). There is a consensus among bankruptcy courts that BAPCPA's addition of section 1322(f) unequivocally states that a debtor's repayment of a 401(k) loan is a necessary expense and cannot be treated as disposable income.[5] And indeed, the Bankruptcy Court in this case recognized this

---

[4] The "means test" utilizes the National and Local Standards established by the IRS for expenses in a given location. The "means test" form is found on the United States Trustee's website at https://www.justice.gov/ust/means-testing, and the United States Courts' website at http://www.uscourts.gov/forms/means-test-forms/chapter-13-calculation-your-disposable-income.

[5] Section 1322(f), found within section 1322 "Contents of the Plan," provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."

7

principle and did not include Mr. Miner's 401(k) loan repayments as disposable income. [Bankr. Doc. 64 at 9]. Unfortunately, there are highly divergent interpretations of 11 U.S.C. § 541(b)(7) and its application to voluntary 401(k) contributions.

Section 541(b)(7) has been described by courts as having "an oddly worded hanging paragraph" that references the concept of Chapter 13 disposable income within section 541, which defines "property of the estate" across the entire bankruptcy code. See In re Vanlandingham, 516 B.R. at 632 (citing In re Drapeau, 485 B.R. 29, 34 (Bankr. D. Mass. 2013)).

Section 541(b)(7) is found within Chapter 541 "Property of the Estate" and sets forth property that is excluded from the bankruptcy estate as follows:[6]

>  (b) Property of the estate does not include –
> 
>  (7) any amount –
> 
>  (A) withheld by an employer from the wages of employees for payment as contributions –
> 
>  (i) to –
>  (I) an employee benefit plan that is subject to Title 1 of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
> 
>  (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or

---

[6] Section 541(b)(7)(A) and (B) are identical with the following distinction: section (A) refers to any amount "withheld from an employer from the wages of employees for payments as contributions," and section (B) refers to any amount "received by an employer from employees for payment as contributions." The distinction is merely a matter of how the retirement contribution is collected by the employer.

> > (III) a tax-deferred annuity under section 403(b) of
> > the Internal Revenue Code of 1986;
> >
> > except that such amount under this subparagraph
> > shall not constitute disposable income as defined in
> > section 1325(b)(2).
> >
> > (ii) to a health insurance plan regulated by State law
> > whether or not subject to such title.

Bankruptcy courts have struggled to interpret the relationship between section 541(b)(7) and section 1325(b)(2), which defines disposable income. However, the cases analyzing the issue can be categorized into three distinct approaches as follows.

The first approach, known as the Johnson approach, is the most favorable to debtors. See In re Johnson, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006). Therein, the bankruptcy court held that debtors are permitted to shelter retirement contributions from unsecured creditors into qualifying employment benefit plans ("EBPs") as long as the contributions are within the legal limits allowed by the Internal Revenue Service. Id. In reaching this decision the Johnson court read the plain language of section 541(b)(7), including the troublesome hanging paragraph as follows:

> *Any amount* that is either 'withheld by' or 'received by' a debtor's employer for qualifying EBPs, deferred compensation plans, tax-deferred annuities, or state-law regulated health insurance plans 'shall not constitute disposable income, as defined in section 1325(b)(2).'

Id. (citing 11 U.S.C. § 541(b)(7)). The Johnson court noted that a 401(k) plan is an EBP covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). Id. (citing 29 U.S.C. § 1003(a) (defining ERISA's coverage)). Thus, relying on the plain language of section 541(b)(7), the Johnson court held that both pre-petition and post-petition retirement contributions are permitted under section 541(b)(7). Id. The Johnson court

9

also concluded that the plain language provided that "debtors may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans." Id. at 263.

The Johnson approach appears to be the majority view based on the number of bankruptcy courts that have examined this issue. See, e.g., In re Garza, 575 B.R. 736 (Bankr. S.D. Tex. 2017); In re Vanlandingham, 516 B.R. 628; In re Cantu, 553 B.R. 565 (Bankr. E.D. Va. 2016); In re Drapeau, 485 B.R. 29; In re Mati, 390 B.R. 11 (Bankr. D. Mass. 2008); In re Devilliers, 358 B.R. 849 (Bankr. E.D. La. 2007); In re Shelton, 370 B.R. 861 (Bankr. N.D. Ga. 2007); In re Nowlin, 366 B.R. 670 (Bankr. S.D. Tex. 2007), aff'd on other grounds, 576 F.3d 258 (5th Cir. 2009); see also 5 Collier on Bankruptcy P § 541.23 (16th ed. 2018) (explaining that section 541(b)(7)'s reference to disposable income under section 1325(b)(2) makes it clear that the provision is intended to exclude retirement withholdings so that Chapter 13 debtors may save for their retirement).

Taking the opposite position, the Prigge approach holds that debtors cannot deduct voluntary retirement contributions when computing disposable income. See In re Prigge, 441 B.R. 667, 677 (Bankr. D. Mont. 2010). The bankruptcy court in Prigge held that in passing BAPCPA Congress did not unequivocally stipulate that 401(k) contributions are to be excluded from disposable income. In reaching this conclusion the Prigge court noted that Congress added section 1322(f) to the Code, which clearly states that payments for 401(k) loans are not to be considered disposable income. Id. at 677. However, Congress did not include a similar section for contributions. Id. The Prigge court concluded that if Congress had intended for 401(k) contributions to be

given the same treatment, it would have done so. Id. (citing Keene Corp v. United States, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")). The Prigge court also noted that the "means test" requires a debtor to reference the IRS guidelines in determining necessary expenses, which do not include contributions to a retirement account as a necessary expense. Id. at 676 (citing In re Egebjerg 574 F.3d 1045, 1052 (9th Cir. 2009)).[7] Thus, the Prigge court held that post-petition 401(k) contributions are disposable income available for repayment to unsecured creditors. Prigge, 441 B.R. at 677; see also In re Parks, 475 B.R. 703 (B.A.P. 9th Cir. 2012) (section 541(b)(7) does not authorize debtors to exclude post-petition retirement contributions when calculating disposable income).

The third approach strikes a balance between the two, and allows the deduction of voluntary retirement contributions to be excluded from disposable income to the extent the contributions were already being made when the petition was filed. See In re Seafort, 437 B.R. 204 (B.A.P. 6th Cir. 2010); In re Read, 515 B.R. 586 (Bankr. E.D. Wis. 2014); In re Bruce, 484 B.R. 387 (Bankr. W.D. Wash. 2012). Bankruptcy Courts following this approach have determined that section 541(b)(7) must be read in conjunction with section 541(a), which defines the scope of property of the estate to be established at the time a bankruptcy petition is filed. See Seafort, 437 B.R. at 209.

---

[7] In re Egebjerg provides that 401(k) loan repayments and contributions are not necessary expenses because they are not listed in the Internal Revenue Manual, which is promulgated by the Internal Revenue Service. 574 F.3d at 1052. This Court notes that Egebjerg involved a Chapter 7 petition, not a Chapter 13.

11

Reading both sections concurrently, the filing of the petition provides a fixed point in time from which the parties and the Bankruptcy Court may determine which assets should be included or excluded from the estate. Id. Thus, only 401(k) contributions that are established with the employer at the filing of the bankruptcy petition are excluded from property of the estate under section 541(b)(7). Id. Under this approach a debtor may not begin or increase retirement contributions post-petition. Id. at 210. [8]

The only circuit court to have examined the issue is the Sixth Circuit, which considered the Seafort decision on appeal. See In re Seafort, 669 F.3d 662 (6th Cir. 2012). Therein, the court approved of the statutory interpretations offered in Prigge, noting that if Congress had intended to exclude 401(k) contributions from disposable income it would have done so like it did for the repayment of 401(k) loans found in section 1322(f). Seafort, 669 F.3d at 672 (citing Keene Corp., 508 U.S. at 208). The court also noted the exclusion of voluntary contributions as a "necessary expense" from Form 22C, which provides the formula for calculating reasonable and necessary expenses of above-median income debtors. Seafort, 669 F.3d at 672.[9] [10]

---

[8] The record demonstrates that Mr. Miner was contributing to his 401(k) prior to filing for Chapter 13 bankruptcy. [Bankr. Doc. 6]. However, the Bankruptcy Court held that the pre-petition contribution amount of $781.02 per month was not "sufficiently limited" or reasonable. [Bankr. Doc. 64 at 15].

[9] But see In re Devilliers, 358 B.R. at 864. Contributions are excluded from disposable income pursuant to section 541(b)(7) and "are not a deduction because they were never included in the first instance." Id.

[10] Form 22C has been superceded by Form 122C-2. See http://www.uscourts.gov/forms/bankruptcy-forms/chapter-13-calculation-your-disposable-income.

However, the court also recognized that section 541(b)(7) does provide some degree of protection for voluntary retirement contributions because it contains the phrase "such contributions 'shall not constitute disposable income as defined in section 1325(b)(2).'" Seafort, 669 F.3d at 672 (citing section 541(b)(7)'s "hanging paragraph"). The court determined that section 541(b)(7) must be read in conjunction with section 541(a), which defines property to be included in the estate at the time a bankruptcy petition is filed. Seafort, 699 F.3d at 672. Reading the sections concurrently, the court concluded that the purpose of section 541(b)(7) is to "clarify that pre-petition retirement contributions do not constitute property of the estate or post-petition disposable income." Id. at 673. Based on the structure of Chapter 13 and section 541, the court concluded that Congress only intended to exclude voluntary retirement contributions in existence (i.e. amounts funded in a retirement account) at the time a bankruptcy petition is filed from disposable income available to repay unsecured creditors. Id. at 674. The court stopped short of deciding whether continuing voluntary contributions should be excluded from disposable income because the issue was not raised on appeal. However, in dicta contained within a footnote, the court indicated that given the reasons set forth in Prigge, it could not agree that continuing contributions should be excluded from disposable income. Id. at n.7.

The Bankruptcy Court in this case adopted the reasoning of the Sixth Circuit's review of Seafort, holding that post-petition voluntary 401(k) contributions are not excluded from disposable income. [Bankr. Doc. 64 at 11]. In reaching this decision the Bankruptcy Court noted that Seafort is the only circuit court opinion to have addressed the issues raised in this case. Id. The Bankruptcy Court also noted that two other

13

circuit courts have adopted other holdings contained within Seafort concerning issues of statutory interpretation, which is paramount in this case. Id. (citing In re Lively, 717 F.3d 406 (5th Cir. 2013) (interpreting section 1115 as unambiguous in Chapter 11 case) and In re Maharaj, 681 F.3d 558 (4th Cir. 2012) (interpreting section 1115 in Chapter 11 case)).

Upon de novo review, this Court disagrees with the conclusion of the Bankruptcy Court that post-petition retirement contributions are to be considered disposable income. Statutory interpretation requires that the Court look to the plain language of the statute, reading it as a whole while being mindful of the linguistic choices made by Congress. BMC Software, Inc. v. C.I.R., 780 F.3d 669, 674 (5th Cir. 2015) (citation omitted). "If the language is plain and unambiguous, it must be given effect." Id. (citation omitted).

The plain language of section 541(b)(7) states that "property of the estate does not include [...] any amount withheld by an employer from the wages of employees for payments as contributions" to an employee benefit plan, deferred compensation plan, or a tax-deferred annuity. The Court finds this language to be unambiguous. This language on its own would exclude funds already contained within a retirement account at the time the petition is filed and the bankruptcy estate is created. Directly following this language, and contained within the same subparagraph, is the phrase added by BAPCPA "except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)." 11 U.S.C. § 541(b)(7). The Court finds that this language is also unambiguous. Although the placement by Congress of the "hanging paragraph" at issue is perhaps awkward, the plain language demonstrates

that Congress intended to exclude retirement contributions from available disposable income as defined by the code in section 1325(b). As noted above, the added phrase is not needed to exclude pre-petition retirement contributions under the plain language of the statute. This Court can only conclude that Congress intentionally added the phrase to exclude all retirement contributions from a debtor's disposable income. See In re Renteria, 470 B.R. 838, 843 (B.A.P. 9th Cir. 2012) (when Congress amends a statute to add language courts must presume the statute is intended to serve some purpose).[11]

In reaching this decision this Court joins the other courts within the Fifth Circuit that have considered this issue and reached the same conclusion. See In re Garza, 575 B.R. 736; In re Devilliers, 358 B.R. 849; In re Oltjen, No. 07-60534, 2007 WL 2329695 (Bankr. W.D. Tex. 2007).[12] Accordingly, the Bankruptcy Court's determination that

---

[11] The Court notes that the "means test" for above income debtors requires a debtor to complete Form 122C-2, which incorporates the National and Local Standards established by the IRS. Form 122C-2 is promulgated by the Judicial Conference of the United States. The Committee Notes dated 2005-2008 associated with the form's development explain that the form provides a line entry for the deduction of contributions by the debtor of certain retirement plans listed in section 541(b)(7)(b) because that provision states that such contributions shall not constitute disposable income as defined by section 1325(b).

[12] The Court also finds In re Nowlin, 576 F.3d 258, to be persuasive in reaching its conclusion. The case involved a debtor whose Chapter 13 plan included monthly contributions of $1,062.51 towards her 401(k) plan and $1,135.79 to repay a 401(k) loan. Id. at 261. Overruling the objection of the Trustee, the bankruptcy court determined that after the 401(k) loan was repaid Nowlin could increase her 401(k) contribution to the maximum of $1200.00 per month, but the remaining funds were disposable income and must be provided to the Trustee to pay unsecured creditors. Id. Although the issue in Nowlin did not involve statutory interpretation of 541(b)(7), both the district court and the Fifth Circuit affirmed the bankruptcy court's findings regarding the debtor's 401(k) contributions upon conclusion of her 401(k) loan repayment. Id. at 267.

post-petition retirement contributions are properly considered disposable income must be reversed.

The Bankruptcy Court also held that pursuant to Seafort, "post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is 'projected disposable income' that must be turned over to the trustee for distribution to unsecured creditors pursuant to section 1325(b)(1)(B) and may not be used to fund voluntary 401(k) plans." [Bankr. Doc. 64 at 9 (quoting In re Seafort, 669 F.3d 662)]. Given this Court's finding that post-petition voluntary retirement contributions are excluded from disposable income, the Bankruptcy Court must reevaluate whether funds that become available to the Debtors upon completion of Mr. Miner's 401(k) loan must be included in a step-up of payments to unsecured creditors.

## II. The Bankruptcy Court's good faith determination.

The Bankruptcy Court also held that contributions to retirement accounts are subject to the "good faith" requirement found in 11 U.S.C. § 1325(a)(3), which states that "the court shall confirm a plan if [it] has been proposed in good faith and not by any means forbidden by law." The good faith standard is included within the code to protect the sanctity of the bankruptcy process and to preclude a debtor from intentionally exploiting the bankruptcy process to unreasonably delay creditors or achieve a reprehensible purpose. In re Stanley, 224 F. App'x. 343, 346 (5th Cir. 2007) (citing In re Elmwood Development Co., 964 F.2d 508 (5th Cir. 1992)).

Appellants argue that the Bankruptcy Court applied the wrong legal standard in determining good faith. [Rec. Doc. 8 at 21]. The Trustee urges this Court to affirm the finding that the proposed plan lacked good faith. [Rec. Doc. 9 at 16-17]. Whether a

correct legal standard has been applied by the Bankruptcy Court is a legal conclusion, which is reviewed de novo. The Bankruptcy Court's determination of good faith is reviewed for clear error, giving due regard for the Bankruptcy Court's opportunity to observe the credibility of the witness. In re Crager, 691 F.3d 671, 675 (5th Cir. 2012).

This Court agrees with the Bankruptcy Court's finding that a debtor's post-petition contributions to a 401(k) plan are one of many elements it must consider in determining good faith. A bankruptcy court is required to consider whether a plan has been proposed in good faith during the confirmation process. See 11 U.S.C. § 1325(a)(3). This inquiry requires the Bankruptcy Court to evaluate a proposed plan in its entirety, which would include a debtor's retirement contributions as set forth within the plan. However, the amount contributed by a debtor within the legal limits established by the Internal Revenue Service cannot be the sole basis for determining that a plan has been filed in bad faith. See In re Garza, 575 B.R. at 571. It appears that the Bankruptcy Court in this case denied confirmation primarily because Mr. Miner's 401(k) contributions reduced the amount of funds available to dispense to creditors. If additional circumstances indicate that a debtor is attempting to abuse the spirit of the Bankruptcy Code through his retirement contributions, the Trustee and unsecured creditors may object for lack of good faith.

Unfortunately, the Bankruptcy Court applied an incorrect test in determining that the Plan proposed by the Miners was not proposed in good faith. The Bankruptcy Court applied its own test created by consolidating the most cited factors within the Eighth Circuit and Eleventh Circuit. [Bankr. Doc. 64 at 15 (citing In re Estus, 695 F.2d 311 (8th

17

Cir. 1982) and In re Kitchens, 702 F.2d 885 (11th Cir. 1983)]. The factors considered by the Bankruptcy Court are as follows:

> (1) frequency of filing bankruptcy;
> (2) accuracy of the petition, schedules, statements, and testimony;
> (3) burden of administration;
> (4) motivation and sincerity in filing Chapter 13, including
>     (a) prepetition conduct or misconduct;
>     (b) debt non-dischargeable in Chapter 13 or Chapter 7 case;
>     (c) timing of petition to interrupt other events;
>     (d) nature and extent of financial problems;
> (5) degree and effort, including
>     (a) duration of the plan;
>     (b) percentage repayment of the debt;
>     (c) income, expenses, lifestyle and luxuries.

[Bankr. Doc. 64 at 15-16].

The Fifth Circuit has adopted a totality of the circumstances test to determine whether a Chapter 13 plan has been proposed in good faith as required by 11 U.S.C. § 1325(a)(3). In re Stanley, 224 F. App'x at 346. The factors the Bankruptcy Court should consider are set forth in Stanley as follows:

> (1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan.

Id. at 346 (internal citations omitted). While the test employed by the Bankruptcy Court has some similarities with the factors set forth in Stanley, the two are not so similar that this Court may find that the Bankruptcy Court examined the issue under the correct Fifth Circuit standard. The Court cannot determine the appropriateness of the Bankruptcy Court's good faith determination until the proper factors are applied to the

facts of this case. Accordingly, this matter must be remanded to the Bankruptcy Court for a determination of good faith under the correct standard.

## CONCLUSION

For the reasons set forth herein, the order of the Bankruptcy Court dated March 14, 2017, denying confirmation of the Appellants proposed plan is hereby **REVERSED**. This matter is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

**THUS DONE AND SIGNED**, this __23rd__ day of May, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE